

Tower 6
600 Hamilton Street
Suite 330
Allentown, PA 18101
p: 484.544.0022
f:  484.750.2540

October 6, 2025

**VIA ELECTRONIC CASE FILING**

The Honorable Judge Michael A. Hammer, Magistrate Judge
Dr. Martin Luther King Building & United States Courthouse
50 Walnut Street, Courtroom MLK 2C
Newark, NJ 07102

**Re:**     **The Roman Catholic Diocese of Paterson, New Jersey, et. al. v. United States Department of State, et. al. Docket No. 2:24-cv-08350-JXN-MAH**

Dear Judge Hammer:

Plaintiffs intend to oppose Defendants' Motions pursuant to Federal Rules of Civil Procedure ("Rule(s)") 12(b)(1), 12(b)(6) and/or 12(e),[1] as Plaintiffs' Complaint adequately states claims for relief to withstand dismissal.

### I.     Immigrant Visa Oversubscription

First, assuming Defendants interpretation of Section 1152(a)(2), Title 8 of the United States Code is accurate (which Plaintiffs do no concede), Plaintiffs aver that the seven (7) percent limitation is applicable to each immigrant visa preference category. Immigration legislation establishes annual limits on the number of family-sponsored preference, employment-based preference, and diversity visa immigrants who may be issued immigrant visas or otherwise obtain lawful permanent resident status based on those classifications (no limits exist for immediate relatives or certain special immigrants). Each classification has its own numerical limitations ("preference categories"). Further, each preference category is subject to the seven (7) percent per country numerical limitation that Defendants discuss.  Here, the EB-4 category is limited to seven and one tenth (7.1) percent of the total employment-based immigrant (7.1% of 144,000, or 10,244) of which seven (7) percent may be issued to immigrants of a single country (7% of 10,244, or 716 per country). When demand exceeds limitations, an "oversubscription" occurs.  Defendants fail to continue in this accurate interpretation of the relevant statutes.

### II.     The Complaint Establishes the Court's Subject Matter Jurisdiction

The Complaint establishes subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1).  See ECF Dkt. No. 43, ¶¶ 17-21. The Court has jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. See 28 U.S.C. § 1331. The Administrative Procedures Act ("APA") further

---

[1] See ECF Dkt. No 43.

Lahoud Law Group, P.C.
October 3, 2025
Page 2

waives sovereign immunity for challenges to unlawful agency action,[2] and Plaintiffs raise purely legal claims regarding Defendants' modification and implementation of immigration statutes, not discretionary determinations committed to agency discretion.

Courts consistently recognize jurisdiction in suits alleging that federal agencies acted arbitrarily, capriciously, or contrary to law under the APA. Bowen v. Massachusetts, 487 U.S. 879, 891 n.16 (1988) (holding that APA claims fall under Section 1331 jurisdiction). Plaintiffs further assert jurisdiction under the Religious Freedom Restoration Act (the "RFRA") and the Fourth and Fifth Amendments of the United States Constitution. The Complaint identifies concrete injuries traceable to Defendants' actions, including imminent loss of lawful status, denial of religious exercise, and deprivation of constitutional rights—all which are redressable by the Court. Accordingly, the Court has jurisdiction, and dismissal under Rule 12(b)(1) is unwarranted.

### III. The Complaint States Plausible Claims for Relief

It is well-settled that a complaint survives a Rule 12(b)(6) Motion so long as it alleges sufficient factual matter, which the Court must accept as true at this stage, to "state a claim of relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008); see also Bell Alt. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plaintiffs' Complaint undeniably meets the standard.

#### 1. APA and Statutory Claims

Defendants unavailingly characterize Department of State' ("DOS") March 2023 action as an interpretative adjustment within the agency's discretion. The APA distinguishes between interpretative rules, which merely clarify existing law and require no notice-and-comment,[3] and substantive (or legislative rules), which "creates rights, assigns duties, or imposes obligations." Dia Nav. Co., Ltd. v. Pomeroy, 34 F.3d 1255, 1264 (3d Cir. 1994). When a "rule is based on an agency's power to exercise its judgment as to how best to implement a general statutory mandate, the rule is likely a legislative one." Id.

Plaintiffs allege that Defendants' March 2023 modification did far more than clarify existing law. Plaintiffs are wrong as **it fundamentally altered the legal landscape** by redefining eligibility under the EB-4 Visa Category, effectively restricting access for religious workers while leaving other employment-based categories intact. This change had immediate and binding consequences on Plaintiffs. DOS' action is being framed as a mere reinterpretation, when it constitutes a **substantive rule** under the APA because it imposes new obligations and consequences. General Electric Co. v. E.P.A., 290 F.3d 337, 380 (D.C. Cir. 2002) (holding that when an agency pronouncement, such as a guidance document, "purports to bind" regulated parties, it operates as a substantive, or legislative, rule triggering the notice-and-comment rulemaking process defined by the APA). By promulgating this substantive change without notice-and-comment, Defendants' action is procedurally invalid under Section 553, Title 5 of the United States Code, and substantively unlawful under Section 706, Title 5 of the United States Code.

---

[2] See 5 U.S.C. §§ 701-706
[3] Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99 (1995) (citations omitted)

Lahoud Law Group, P.C.
October 3, 2025
Page 3

### 2. RFRA and Free Exercise Claims

Plaintiffs sufficiently allege that Defendants' actions substantially burden religious exercise by preventing clergy from carrying out their vocation and by interfering with Plaintiff-Roman Catholic Diocese of Paterson's (the "Diocese") ability to employ foreign-born clergy in the midst of a national crisis caused by declining numbers of priests in the United States. Pursuant to the RFRA, "religious exercise" is broadly defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." See 42 U.S.C. §20000cc-5(7)(A). In Catholicism, a priest is essential to the practice of the faith. Only an ordained priest may celebrate Mass and administer the sacraments, including Holy Communion, Reconciliation, and the Anointing of the Sick.[4] Because the celebration of Mass and the sacraments are fundamental to Catholic religious exercise, restrictions that prevent the Diocese from employing qualified clergy directly impede on the Diocese's ability to practice its faith.

Moreover, the Free Exercise Clause of the First Amendment (the "Clause"), "protect[s] religious observers against unequal treatment" and requires strict scrutiny when laws impose burdens on religious status. Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 458 (2017) (citations omitted) Neutrality is not determined solely by statutory text, as the Clause "extends beyond facial discrimination." Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 534 (1993). The Clause prohibits government action that intentionally burdens religious exercise and also prohibits facially neutral laws that disproportionately harm religious institutions. Here, Defendants' modification violates the Clause by specifically targeting the EB-4 Visa Category applicants like the individual Plaintiffs and causing a discriminatory effect on religious institutions like the Diocese.

At the pleading stage, facts supporting a plausible interference of burden suffice. The Complaint sets forth detailed allegations that satisfy this standard, and dismissal is therefore improper.

### 3. Due Process and Equal Protection Claims

Plaintiffs allege that Defendants' modification discriminates against religious employers and violates both substantive and procedural due process. Allegations identify disparate treatment of religious employers as compared to secular employers, along with the absence of notice and comment before the March 2023 policy took effect. "The fundamental requirement of procedural due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Substantive due process, in turn, "includes . . . the more general protection against 'certain arbitrary, wrongful government actions regardless of the fairness of procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990). Plaintiffs sufficiently allege that Defendants' arbitrary modification deprives Plaintiffs of procedural and substantive due process by effectively altering immigration status and rights without adequate notice or opportunity for comment or to be heard.

The Equal Protection component of the Fifth Amendment further prohibits government action that discriminates between similarly situated groups without adequate justification. Plaintiffs allege that religious workers and their employees are uniquely burdened by the 2023 modification, while

---

[4] See CIC (1983) can. 900 § 1; 959; 961 §1/1; 1003 § 1

comparable secular employment-based categories remain unaffected. Such disparate treatment of religious institutions states a plausible claim for violation of equal protection guarantees.

Defendants' assertions that Defendants' "interpretation" is "correct" merely creates a dispute of law and fact, which cannot be resolved at the pleading stage. The plausibility standard does not require proof at the pleading stage, only sufficient factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). Plaintiffs provide ample support for each claim, rendering dismissal improper.

## IV.    The Complaint is Neither Vague nor Ambiguous

Defendants alternatively suggest that the Complaint requires a more definite statement. Rule 12(e) relief is highly disfavored and is only appropriate where a complaint is **so vague or ambiguous that the opposing party cannot reasonably prepare a response**. See Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006). This Court has considered that Rule 12(e) may "be implemented to require more than what is required by Rules 8(a)(2) and 12(b)(6)" making motions under Rule 12(e) prone to abuse by defendants," therefore, "its exercise should be cast in a mold of strictest necessity." See Clark v. McDonald's Corp., 213 F.D.R. 198, 233 (D.N.J. 2003) (citations omitted). This Court has further acknowledged that "[i]n view of the great liberality of F.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." Id.

Here, the Complaint spans over 50 pages, sets forth detailed factual allegations, identifies each Plaintiff and the harms suffered, and specifies the statutory and constitutional provisions at issue. Defendants have demonstrated a full understanding of the claims by previewing substantive dismissal arguments in Defendants' pre-motion letter. The fact that Defendants dispute the merits of Plaintiffs' claims does not render the pleading unintelligible.

## V.    Conclusion

The Complaint provides a clear, comprehensive, and well-supported basis for relief with more than sufficient detail to allow for a meaningful response. Jurisdiction is firmly established under multiple statutory and constitutional provisions. Each count alleges a plausible claim for relief under established pleading standards. Therefore, dismissal under Rules 12(b)(1), 12(b)(6), or 12(e) is unwarranted and the Court should deny any request for dismissal of Plaintiffs' Complaint.

Very Truly Yours,

**LAHOUD LAW GROUP, P.C.**

/s/ Daniel J. Baurkot                                                             /s/ Raymond G. Lahoud
Daniel J. Baurkot, Esquire                                                  Raymond G. Lahoud, Esquire

cc: Counsel for Defendants